# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INTERVEST NATIONAL BANK** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT WELCH** | : | **NO. 10-3119** |

## <u>MEMORANDUM OPINION</u>

**Savage, J.**                                                                                    **April 7, 2011**

Intervest National Bank ("INB") initiated this action seeking judgment against Robert G. Welch and Robert B. Welch (collectively "guarantors") as guarantors of a defaulted mortgage note.  In their answer to INB's complaint, the guarantors deny any obligation under the guaranty and raise multiple affirmative defenses, including that the underlying mortgage was unenforceable, and the guaranty is ambiguous and invalid.  Intervest has now moved for summary judgment, contending there is no genuine issue of material fact regarding the validity of the note or the amount owed, including the fair market value of the subject property and the applicable interest rate, because those issues had been litigated and decided in a mortgage foreclosure proceeding in Maryland.  Addressing defendants' defenses, INB argues that the note is enforceable despite a drafting error and the guaranty is enforceable and unambiguously requires guarantors to assume 50% of Fron LP's indebtedness under the mortgage and the note.

Opposing summary judgment, the guarantors make four arguments.  First, they claim that the validity of the note, the amount of indebtedness, and the market value of the foreclosed property were not actually litigated and decided in the Maryland proceeding, and they are not precluded from raising those issues in this matter because they were neither

parties to nor in privity with the defendant in the Maryland action. Second, the note is unenforceable as a result of INB's unilateral drafting mistake. Third, an ambiguity in the guaranty creates a genuinely disputed issue of material fact regarding the extent of their liability. Fourth, the interest rate is illegal. For the first time, at oral argument, the guarantors asserted that the guaranty limits their obligation to payment of insurance premiums and real estate taxes only, and not the debt.

Because there is no genuine dispute as to the validity of the note, the amount owed, the applicable interest rate, and the extent of the defendants' obligations under the guaranty, plaintiff's motion for summary judgment shall be granted.

## Background

In February 2005, a mortgage broker approached INB seeking a loan on behalf of Fron-DJW, LLC ("Fron LLC"). At that time, Robert G. Welch advised the broker that Robert B. Welch was a principal, the manager and a member of Fron LLC and that Dennis Fronheiser, Linda Fronheiser, and Donna Jean Welch LLC were the other principals and members of Fron LLC.[1] Robert B. Welch, on behalf of Fron LLC, signed a commitment letter on March 15, 2005, accepting a mortgage loan from INB in the amount of $4,250,000.00 to purchase the property located at 85 Chestnut Point Road, Perryville, Md.[2] The following day, Robert G. Welch, Robert B. Welch's father, advised INB that the borrower should be changed to Fron-DJW, LP ("Fron LP"), whose general partner was

---

[1] Plaintiff's Statement of Undisputed Fact ("PSOF") at 9.

[2] *Id.* at 10.

Fron-DJW GP LLC ("Fron GP LLC").[3] The principals of Fron LP were Fron GP LLC, Linda and Dennis Fronheiser, and the Donna Jean Welch Irrevocable Trust (the "Trust").[4]

On April 7, 2005, the commitment letter was modified to reduce the amount of the loan to $4,210,000.00 and to require that Robert B. Welch and the other principals of the borrower jointly and severally guarantee 50% of the loan.[5] Robert B. Welch signed the modified commitment letter on behalf of Fron LLC.[6]

During the process of drafting the mortgage loan papers, INB's counsel forwarded to Fron LP's attorney a draft promissory note and mortgage identifying Fron LLC as the borrower.[7] Fron LP's attorney returned the documents with his edits, which included changing the borrower from Fron LLC to Fron LP in the body of the Note and its signature block.[8]

Closing on the loan occurred on June 1, 2005.[9] At closing, Robert B. Welch, on behalf of Fron LP, executed the Mortgage, Settlement Disclosure/Notice and Agreement, Buyer/Borrower's Affidavit and Agreement, Purchaser's Settlement Statement, and Notice of Waiver of Rights.[10] He also executed the Note, which identified the borrower as Fron

---

[3] *Id*. at 11.

[4] Defendants' Statement of Undisputed Fact ("DSOF"), at II.

[5] PSOF, at 13-14.

[6] *Id*. at 13.

[7] *Id*. at 15.

[8] *Id*. at 17.

[9] DSOF, at II.

[10] PSOF, at 28.

LP in the body of the Note but listed Fron LLC as the borrower in the signature block.[11] Fron LLC does not exist. The parties failed to notice this discrepancy at the time.

On November 1, 2005, in connection with the Mortgage and Note, guarantors executed a continuing guaranty (the "guaranty"). The guaranty was retroactive to June 1, 2005.[12]

From June 1, 2005 through January, 2008, Fron LP made the required mortgage payments.[13] In early 2008, Fron LP fell behind in its payments. Ultimately, on June 1, 2008, it defaulted on the Mortgage.[14]

On June 11, 2008, INB filed a complaint in strict foreclosure against Fron LP in the Circuit Court for Cecil County, Maryland.[15] In its answer, Fron LP expressly admitted that it had executed the Note in favor of INB and had failed to make the requisite payments.[16] On June 1, 2009, the court granted a Joint Motion for Order of Court Directing Sale. In the joint motion, the parties agreed that "Fron executed a Judgment Note ("Note") and a Mortgage (the "Mortgage") in favor of INB [Intervest National Bank]". They also requested that the court find Fron LP in default under the Note and the Mortgage; fix the amount of debt, interest and costs; and issue a decree for the sale of the mortgaged property.

---

[11] *Id*. at 24.

[12] DSOF, at II.

[13] PSOF, at 40.

[14] *Id*. at 42.

[15] Complaint, *Intervest v. Fron-DJW, L.P.*, No. 07-D-08-000648 (Cir. Ct. Cecil Cnty. June 11, 2008).

[16] Answer at ¶ 1, *Intervest v. Fron-DJW, L.P.*, No. 07-D-08-000648 (Cir. Ct. Cecil Cnty. July 31, 2008).

On June 9, 2009, the court issued a Decree for Sale of Mortgaged Property, directing a foreclosure sale of the subject property.[17]  It found:

- "[T]hat a default has occurred under the Note and Mortgage which are the subject of this action, and that the default occurred when Defendant failed to make timely payments under the Note"; and

- "[T]he amount of Defendant's debt as of May 21, 2009 is: $5,189,435.52, which includes (i) $4,024,571.56 of principal; (ii) $81,161.96 for unpaid interest at the contract rate of six percent (6.0%) per annum accrued from February 1, 2008 through June 1, 2008; (iii) $949,799.70 for unpaid interest at the default rate of twenty-four percent (24%) per annum accrued from June 2, 2008 through May 21, 2009; (iv) $63,150.00 for the "Fee Payment" due and payable under Section 1(f) of the Mortgage; (v) $3,313.90 for late charges due and payable under the Note and Mortgage; (vi) $5,899.28 for appraisal and travel expenses incurred and paid by Plaintiff and required to be paid by Defendant pursuant to the Mortgage; and (vii) $61,539.12 for attorney fees and expenses incurred and paid by Plaintiff and required to be paid by Defendant pursuant to the Mortgage[.]"

Pursuant to the Decree and after publication of the sale, the property was sold to INB as the successful bidder for $500,000.00 on October 27, 2009.  The court issued its final ratification of sale on April 20, 2010.  Despite INB's demand under the guaranty, defendants have made no payments to INB.

Fron LP filed timely exceptions to the auditor's report.  It disputed the calculation of interest, costs and expenses, and argued that the foreclosure sale price of the property did not reflect its fair market value at the time of the foreclosure sale.

On February 18, 2011, the Maryland court granted in part and dismissed in part Fron LP's exceptions.  Noting that "the difference between the appraisal and the sale price,

---

[17]  Decree, *Intervest v. Fron-DJW, L.P.*, No. 07-D-08-000648 (Cir. Ct. Cecil Cnty. June 9, 2009).

in and of itself, is not a sufficient reason to modify the sale price," the court dismissed Fron LP's exception to the market value of the property. However, it granted the exception as to the applicable interest rate, reducing it from 24% to 6%. The court remanded the matter to the auditor for a recalculation of the default interest at a rate of 6% per annum.

On remand, the auditor recalculated the interest as directed by the court. Applying a 6% interest rate, the auditor calculated Fron LP's total indebtedness at the time of the foreclosure sale at $4,429,908.87. After deducting the net proceeds of the sale from the debt, he fixed the deficiency at $4,000,412.98.

The Amended Audit was submitted on March 2, 2011, and ratified by the court on March 18, 2011.

## Standard of Review

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmovant must show more than the "mere existence

of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotations omitted).

### Discussion

INB argues that the judgment rendered in the Maryland action against Fron LP precludes the guarantors from contesting the validity and enforceability of the Note against Fron LP and the total amount due under it, including the value of the mortgaged property at the time of the foreclosure sale and the applicable interest rate under the Mortgage. If the underlying Mortgage and Note are invalid, there is nothing to guarantee. If they are valid and enforceable, the question is what is the guarantors' liability under the guaranty.

We start with the federal full faith and credit statute, 28 U.S.C. § 1738 (2010), which requires us to apply state law in determining the preclusive effect of the state court judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In other words, we must look to Maryland preclusion principles to determine whether the Maryland judgment is binding in this federal action.

Maryland law features three preclusion doctrines that address the finality of judgments: res judicata, collateral estoppel, and collateral attack on judgments. *United Book Press, Inc. v. Md. Composition Co., Inc.*, 786 A.2d 1, 10 (Md. Ct. Spec. App. 2001). Res judicata bars parties from relitigating the same claims they already or could have litigated in an earlier action. *Id*. Collateral estoppel prevents a party who was a party or

in privity with a party to the earlier action from relitigating factual issues that were litigated in that earlier action. *Id*. The collateral attack on judgments doctrine precludes the parties or those in privity with them from challenging the validity of an existing judgment in an independent proceeding. *Klein v. Whitehead*, 389 A.2d 373, 385 (Md. Ct. Spec. App. 1978).

Each doctrine has its own distinct requirements while sharing some of the same. Consequently, certain elements overlap. Further, although one does not apply does not mean another will not.

Res Judicata does not apply here. The causes of action are not identical. The Maryland action was not based on the guaranty. Nor did it address the guarantors' liability under the guaranty. Thus, if the judgment in the Maryland action is to have preclusive effect in this case, the broader doctrines of collateral estoppel or collateral attack must apply.

### *Collateral Estoppel*

Under Maryland law, four elements must exist for collateral estoppel to apply: (1) the fact or issue actually decided is identical to the one involved in the subsequent litigation; (2) the fact or issue actually decided was essential to the prior judgment; (3) there was a final judgment on the merits; and (4) the party against whom the doctrine is asserted was a party or in privity with a party to the prior litigation. *Pope v. Bd. of Sch. Comm's of Balt. City*, 665 A.2d 713, 721 (Md. Ct. Spec. App. 1995).

The Maryland court did not decide the guarantors' obligation under the guaranty. That decision is the subject of this litigation. In reaching its decision, however, the Maryland court did decide issues identical to those presented in this case - the validity and

enforceability of the Mortgage and Fron LP's total indebtedness, taking into account the market value of the property and the applicable interest rate under the Mortgage. Hence, the first element - identity of facts and issues - is satisfied.

In its complaint in the mortgage foreclosure action, INB sought a judgment against Fron LP for default of the Mortgage and the amount of the outstanding balance due under the Mortgage and the Note. Fron LP admitted, in its answer to the complaint, that it had executed and delivered both the Note - the validity of which the guarantors now challenge - and the Mortgage. After a year of litigation, INB and Fron LP jointly moved for an order to sell the property and to fix the amount of debt. In so moving, Fron LP admitted the validity and enforceability of the Mortgage and Note. Granting the motion, the Maryland court found Fron LP in default and fixed the amount of the outstanding debt, including determining the fair market value of the property and the applicable interest rate.

The guarantors seemingly argue that the issue of the Note's validity was not presented to the Maryland court. They are legally and factually wrong. The court specified that there was a default under both the Note and the Mortgage. The court could not have ordered the property sold unless it first found that the Mortgage and Note giving rise to the debt were valid. Thus, the validity of the Note was essential to the Maryland judgment.

For purposes of resolving whether an issue was actually litigated, Maryland has adopted Restatement (Second) of Judgments § 27. *United Book Press*, 786 A.2d at 11; *Deitz v. Palaigos*, 707 A.2d 427, 435 (Md. Ct. Spec. App. 1998). Under that section, "'when an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this [s]ection.'" *Deitz*, 707 A.2d at 435 (quoting Restatement (Second) of Judgments § 27 cmt.

(d)).  Assessing whether an issue has been actually litigated, we may look beyond the judgment and examine the pleadings and the evidence.  *United Book Press*, 786 A.2d at 12.  Indeed, when the pleadings are unclear, we may even examine extrinsic evidence.  *Id*.

The validity of the Note was raised in the Maryland complaint.  Though Fron LP in its answer formally conceded the point, the resolution of that issue was essential to the Maryland judgment.  Indeed, the proceedings ultimately resulted in the Maryland court granting the joint motion which acknowledged Fron LP's indebtedness under the Note.  Further, Fron LP denied the equity of a mortgage sale and demanded a strict accounting of the amount of debt owed under the Note.  Eventually during the litigation, the amount of the indebtedness was agreed to by the parties and accepted by the court in its decree.  Though the court, in ruling on Fron LP's exceptions, vacated the indebtedness amount and applied a lower rate of interest, it left undisturbed the validity of the Mortgage and fair market value of the property.  At the same time, it reduced the interest rate in Fron LP's favor.  In other words, these issues were essential to the final adjudication.  Therefore, the second requirement for application of collateral estoppel is met.

Whether a foreclosure action has a preclusive effect depends on whether the plaintiff in the proceeding sought the property only or both the property and a money judgment, that is, whether the action was purely *in rem* or *in personam*.  *Fairfax Savings, F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1272 (Md. 1995).  If it is solely *in rem*, there is no judgment on the merits with regards to the parties' rights and obligations.  Under Maryland law, when no deficiency decree is sought against the mortgagor but only the right of the mortgagee to foreclose on the encumbered property, a foreclosure proceeding is

strictly *in rem*. *Id*. at 1272-73. Because the foreclosure proceeding establishes only that a valid debt exists against the property, the judgment cannot be used to bind the mortgagor for payment of the debt. *Id*. at 1273 (citing *Bainder v. Sound Bldg. & Loan Ass'n*, 158 A. 2, 5 (Md. 1932)). However, where the mortgagor personally appears in the action, the proceeding is *in personam.* By appearing in the action, the mortgagor has the opportunity to contest the issues, including the amount of any deficiency judgment, by filing exceptions. The result of the proceeding may include judgments in the form of rulings on exceptions to the sale and to the auditor's report, which are given *in personam* collateral estoppel effect. *Id*. Thus, where a mortgagor personally appears in the foreclosure action, a judgment rendered there has preclusive effect in subsequent litigation.

Fron LP appeared in the Maryland action. Although it conceded its obligations under the Note, it challenged the amount of indebtedness and the priority of INB's mortgage against the property vis-a-vis a third-party lien holder. Contrary to the guarantors' argument that the Maryland action resulted only in a declaration that the property was subject to a mortgage in INB's favor, the court did more. It found that Fron LP defaulted when it failed to make timely payments under the Note; and it fixed the amount of the debt as of May 21, 2009 at $5,189,435.52. By personally appearing in the Maryland proceeding, Fron LP had the opportunity to dispute its obligations; and it did when it filed exceptions to the auditor's report challenging the court's determination of total indebtedness, which had the result of decreasing Fron LP's indebtedness under the Note and Mortgage to $4,429,908.87. Under the circumstances, the Maryland foreclosure action was an *in personam* action that resulted in a final judgment on the merits. Thus, the third element of collateral estoppel is satisfied.

Before they can be bound by the Maryland judgment, the guarantors must have been in privity with Fron LP, the defendant in the prior action. *Warner v. German*, 642 A.2d 239, 242 (Md. Ct. Spec. App. 1994). A party is deemed in privity if he has a direct interest in the suit and the right to control the proceedings and to appeal. *Id*. (quoting *Ugast v. LaFontaine*, 55 A.2d 705, 708 (Md. 1947)). In determining whether privity exists, Maryland law focuses primarily on the procedural rights of the parties involved. *Warner*, 642 A.2d at 243. *See also Caldor v. Bowden*, 625 A.2d 959, 971 (Md. 1993) ("The appropriate focus is whether the parties against whom collateral estoppel is asserted have been afforded their day in court on those facts and issues.") (internal quotations omitted). Courts thus must focus on "the nature of the interests binding the two parties, and, correspondingly, whether they share the same incentive in their separate litigation attempts." *Id*.

Here, the defendants were not mere passive guarantors of the mortgage Note. *See Watkins v. State to Use of Matthews*, 161 A. 173, 174 (Md. 1932) (holding that prior judgment against principal was only prima facie evidence against surety). Their relationship to Fron LP was financial and participatory. They were bound to Fron LP through a financial interest and had the ability to control its activities. They executed the guaranty as an inducement for INB to finance the real estate development project from which they sought to profit. Robert B. Welch was the manager of Fron GP LLC and the general partner of Fron LP. Under the terms of the Fron LP partnership agreement, all authority to act on behalf of Fron LP was placed in the general partner, Robert B. Welch. This authority was transferred to Robert B. Welch with the written consent of Fron LP's partners, who authorized him, as manager of the general partner, to negotiate and execute the Mortgage and Note on behalf of the partnership and to carry out all consequent

obligations of the partnership. This consent bestowed upon Robert B. Welch full authority to act on behalf of Fron LP and its members in all matters concerning the subject property. In addition, Robert B. Welch served as trustee of the Trust, a limited partner of Fron LP, and was acting as its agent when he signed the partnership agreement and the written consent.

By his own admission, Robert G. Welch controlled Fron LP's conduct of the Maryland proceeding up to and including authorizing the submission of the joint motion admitting Fron LP's liability under the Note. His participation in the litigation demonstrates his ability to control it. Accordingly, the guarantors' relationship with Fron LP in the Maryland proceeding was sufficiently close that they are bound by the Maryland judgment.

Applying Maryland's collateral estoppel principles to the facts of this case, guarantors are precluded from challenging the validity of the Note and the amount of Fron LP's indebtedness under it, including the fair market value of the property and the applicable interest rate.

### The Collateral Attack Rule

Even if collateral estoppel did not apply, the Maryland collateral attack on judgments rule would bar the guarantors from avoiding the preclusive effect of the Maryland judgment on the validity of the Note and Mortgage and the amount of Fron LP's indebtedness.

The rule bars claims and actions of parties or privies in any separate and independent proceeding. A party cannot challenge the validity of an existing judgment. A judgment is subject to the collateral attack bar even if it is not final. *Klein,* 389 A.2d at 386.

A collateral attack is "an attempt to avoid, defeat, or evade [a judgment], or deny its

force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." *Id*. at 385 (quoting 49 C.J.S. Judgments § 408). "In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack on the judgment is collateral." *Id*. Although the defendants do not allege that the Maryland action was invalid in itself, they attempt to indirectly undermine the judgment rendered there. Rather than impugn the validity of the Maryland action, guarantors assert a defense, challenging the enforceability of the Note, which, if accepted, would contradict and evade its holding. As discussed above, guarantors were in privity with Fron LP. Thus, under Maryland's doctrine prohibiting collateral attacks on judgments, the guarantors cannot challenge the judgment entered there.

### *Scrivener's Error*

To avoid their obligations under the guaranty, the guarantors contend that the borrower under the Note was Fron LLC and not Fron LP; and they only guaranteed the debt of Fron LP. They argue that the incorrect name in the Note's signature block was INB's unilateral mistake. Their disingenuous attempt is not supported by the undisputed facts. The parties' mutual intention was clear and known to all.

Everyone involved in the loan transaction, including Fron LP's attorney and INB's attorney who drafted the Mortgage and the Note, knew that the borrower was Fron LP. The borrower's attorney pointed out an error in the documents that reflected that the borrower had been incorrectly named. Although the proper entity's name was substituted for the improperly named entity in the body of the documents, the name on the signature

block in the Note was not. Nevertheless, when Robert B. Welch signed the Note, he believed and knew he was doing so as the authorized manager of Fron LP.

A contract may be reformed to reflect the parties intentions when "'there is a mutual mistake of fact.'" *Clemons v. Am. Cas. Co.*, 841 F. Supp. 160, 163 (D. Md. 1993) (quoting *Flester v. Ohio Cas. Ins. Co.*, 307 A.2d 663, 670 (Md. 1973)). Where, as a direct result of a material mistake, the written instrument fails to express the intended agreement, the contract will be reformed. *Brockmeyer v. Norris*, 10 A.2d 326, 329 (Md. 1940). The party seeking reformation must conclusively establish what the parties intended and understood the contract to have been and was, but for the mistake. *Clemons*, 841 F. Supp. at 163-64 (quoting *Flester*, 307 A.2d at 670).

Where the mistake results from an error by the draftsmen, a court may interpret a contract to reflect the parties' intentions. *Painter v. Delea*, 184 A.2d 913, 916 (Md. 1962). *See also Higgins v. Barnes*, 530 A.2d 724, 726 (Md. 1987). A mistake may be mutual if the draftsmen was acting as an agent of all of the parties. *Kishter v. Seven Courts Cmty. Ass'n, Inc.*, 626 A.2d 993, 997 (Md. 1993). Even the error of an agent of one party may be a mutual mistake where the mistake "is in the supposition of both that their final writing states their agreement correctly." *Mutual Life Ins. Co. of Balt. v. Metzger*, 172 A. 610, 612 (Md. 1934).

The undisputed evidence demonstrates that Fron LP and INB intended to enter into the loan agreement with a mortgage covering the subject property. During the drafting process, INB's attorney neglected to make the correction to reflect the appropriate borrowing entity in the Note's signature block when correcting the name elsewhere in the lending documents. The face page of the Note where the parties are identified lists Fron

LP as the mortgagor and borrower. Moreover, all other material associated and executed in conjunction with the Mortgage and Note were executed in the name of Fron LP. Thus, the only issue is whether the failure to change the signature block on the Note constitutes a mutual mistake that will allow the court to give effect to the parties' intentions.

Although the drafter of the Note was acting as INB's agent, the agency status does not render the mistake unilateral for purposes of reforming the contract. Neither Fron LP nor INB noticed the error at the closing. Both parties understood that Robert B. Welch was executing the Note and the Mortgage on behalf of Fron LP.

The parties' conduct prior and subsequent to the closing indisputably reveals that they intended Fron LP to be bound by the Note. During the drafting process, the borrower's attorney directed INB's counsel to correct the signature block to reflect Fron LP as the borrower. After closing, Fron LP made payments under the Note for nearly three years. Indeed, Robert G. Welch acknowledged in his deposition testimony that he believed Fron LP was entering into a mortgage agreement with INB to finance the purchase of the subject property, and that subsequent to closing, Fron LP made payments to INB on the Mortgage.

Both parties intended that Fron LP was to be bound by the terms of the Note. Accordingly, the Note is binding and enforceable against Fron LP, and the default under it triggers the commitments contained in the guaranty.

### *Enforceability of the Guaranty*

INB claims that the guaranty unambiguously requires the guarantors to assume 50% of Fron LP's obligations under the Mortgage. The guarantors, on the other hand, contend that two provisions in the guaranty create an irreconcilable conflict. Specifically, they argue

that paragraph one provides that the guarantors are responsible for 50% of Fron LP's obligations and in another paragraph they assume 100% responsibility. Thus, they contend the ambiguities render the guaranty unenforceable.

These provisions are:

1. As a material inducement to Lender to make the loan to the Borrower, with knowledge that Lender is making the Loan in reliance upon this Guaranty, and in further consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound hereby, the undersigned, hereby guarantees as surety, absolutely and unconditionally, to Lender:

    *Up to 50% of the obligations of Borrower as set forth in the Mortgage.*

    Payment hereunder shall be made in any coin or currency which at the time of payment is legal tender in the United States of America for public and private debts. Guarantor further agrees that this Guaranty may be enforced by Lender in accordance with the provisions hereunder without first making demand upon or proceeding against Borrower or others liable on any of Borrower's Obligations, and without the necessity of first resorting to any collateral security secured by the Mortgage or otherwise or other property or exercising any or all available rights or remedies.

*Mortgage*, at ¶ 1 (emphasis added).

2. Subject to the Mortgage, Guarantor unconditionally agrees that if for any reason the Borrower is in default of any of Borrower's Obligations then Guarantor will immediately and unconditionally assume *all responsibility for Borrower's Obligations* and all payments due by the Guarantor shall become due on demand made by Lender; provided at any time and from time to time, Lender, in its sole discretion, may elect to take any actions it believes necessary to fulfill Borrower's Obligations, at the sole cost and expense of Guarantor but with the further right to suspend or

terminate such actions at any time and from time to time. No such actions by Lender will release or limit the liability of Guarantor and Guarantor agrees to repay Lender all sums expended by it to fulfill Borrower's Obligations.

*Mortgage*, at ¶ 2 (emphasis added).

Under Pennsylvania law,[18] the primary task in interpreting the contract is to ascertain the intent of the parties. *401 4th St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005). The parties' intent is determined from the document itself. *TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900, 908 (Pa. Cmmwth. Ct. 2004). However, where multiple documents memorialize a single transaction, those documents are read together to ascertain the parties' true intent. *Dollar Bank v. Swartz*, 657 A.2d 1242, 1244 (Pa. 1995) (mortgage, guaranty, and suretyship agreement interpreted together); Restatement (Second) of Contracts § 202(2) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.").

When the contract language is clear and unambiguous, the court construes the contract as a matter of law. *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009). On the other hand, where the contract is ambiguous, the factfinder ascertains the parties' intent. *Id.* Merely because the parties interpret the contract differently does not mean it is ambiguous. *Espenshade v. Espeshade*, 729 A.2d 1239, 1242 (Pa. Super. 1999). Only where different constructions are capable of being understood in more than one sense is the contract ambiguous. *Ins. Adjustment Bureau v. Allstate*, 905 A.2d 462,

---

[18] The parties have agreed that the guaranty shall be interpreted under the laws of the Commonwealth of Pennsylvania and Pennsylvania courts shall have jurisdiction over any dispute arising hereunder. *See Guaranty*, at ¶ 20.

468-69 (Pa. 2006).  Where the alternative meaning is unreasonable, there is no ambiguity.  *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001).

In interpreting the contract, effect must be given to all of the contract's provisions.  *Id*. at 429.  Clauses that seem in conflict must be construed, where possible, as consistent with one another.  *Flatley v. Penman*, 632 A.2d 1342, 1344 (Pa. Super. 1993).  Contract provisions must not be read independently of each other, but rather as part of a whole.  *Id*.  One part of a contract should not be read to nullify another.  *Meeting House Lane Ltd. v. Melso*, 628 A.2d 854, 857-58 (Pa. Super. 1993).

Paragraphs one and two are not contradictory, but are in harmony.  Paragraph one, read in its entirety, caps the guarantors' financial responsibility at 50% of Fron LP's obligations.  The remainder of the paragraph describes how and when INB can pursue payment from the guarantors in the event of Fron LP's default.

Paragraph two does not provide that the guarantors are responsible for the full amount of Fron LP's obligation.  It does not alter the guarantors' financial obligations set forth in paragraph one.  Instead, paragraph two requires that payment by the guarantors is due immediately upon demand in the event of Fron LP's default, while reserving INB's right to pursue additional actions in order to recover under the defaulted mortgage.

Second, contrary to guarantor's position, the term "Borrower's Obligations" in both paragraphs clearly refers to Fron LP's obligation under both the Mortgage and the Note.  Because the term "Borrower's Obligations" is not defined in the guaranty and the mortgage documents, we give the term its ordinary meaning.  *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).  In interpreting the term obligation, we look at the Note, the Mortgage, and the guaranty together.  *Dollar Bank*, 657 A.2d at 1244.  The commitment letter signed by

Robert G. Welch for Fron LP also reflects the parties' intentions. Accordingly, we cannot define the term in isolation as the guarantors urge.

Under Maryland law,[19] the rules of contract interpretation apply when reviewing the language of a mortgage. *Calomiris v. Woods*, 727 A.2d 358, 362 (Md. 1999). Like Pennsylvania, Maryland applies the objective test in contract interpretation. *Towson Univ. v. Conte*, 862 A.2d 941, 946 (Md. 2004). We construe the contract by asking what a reasonable person in the parties' positions would have intended by the language used. *Jenkins v. Karlton*, 620 A.2d 894, 901 (Md. 1993). A contract is ambiguous if a reasonably prudent person could divine multiple meanings from it. *Calomiris*, 727 A.2d at 363. Determining whether the language allows multiple interpretations includes considering "'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.'" *Id*. (quoting *Pacific Indem. v. Interstate Fire & Cas.*, 488 A.2d 486, 488 (Md. 1985)). Whether a contract is ambiguous is a question of law. *The Wellington Co., Inc. Profit Sharing Plan and Trust v. Shakiba*, 952 A.2d 328, 337 (Md. Ct. Spec. App. 2008).

At oral argument, the guarantors raised a new argument. They now contend that their obligation under the guaranty is limited to discrete "obligations" of Fron LP set forth with particularity in the Mortgage. They argue that the term "obligations," as used in the guaranty, is distinct from the use of the same term in the Mortgage, including payment of

---

[19] Although Pennsylvania law governs interpretation of the guaranty, Maryland law applies to interpreting the Mortgage. *See Mortgage*, at ¶ 36(u) ("This mortgage shall be governed by, and construed in accordance with the laws of the State of Maryland."). Thus, Maryland law controls our interpretation of Fron LP's obligations under the Mortgage.

indebtedness, because payment of indebtedness is not explicitly referred to as an "obligation" in the Mortgage.

According to the guarantors, their obligation under the guaranty is defined by the following language in the Mortgage:

<u>Payment of Impositions, Insurance Premiums, Transfer Taxes</u>

(a)     It shall be *the obligation* of Mortgagor to pay all Impositions and Insurance Premiums when due.

(b)     It shall be *the obligation* of Mortgagor to pay all transfer taxes when due.

*Mortgage*, at ¶ 3.  They argue that because payment of indebtedness is not included as an obligation in this single paragraph, it cannot be among the borrower's obligations that they guaranteed.

The obligations assumed under the guaranty include Fron LP's commitment to pay the indebtedness incurred under both the Mortgage and the Note.  While indebtedness is not specifically referred to as an "obligation," it is the primary obligation of any mortgage. *The Wellington Co.,* 952 A.2d at 338.

 The circumstances of the transaction demonstrate that the parties expected to include payment of indebtedness as a commitment under the guaranty.  Paragraph B of the guaranty states that "[a]s a condition of the Loan Documents, to be executed simultaneously herewith, the Lender requires that the Guarantor execute and deliver this Guaranty in favor of the Lender."  *Guaranty*, at ¶ B.  Paragraph D states "[t]o induce the Lender to make the Loan, the Guarantor desires to execute and deliver this Guaranty for the benefit of the Lender."  *Guaranty*, at ¶ D.  Execution of the guaranty was a condition upon which INB agreed to make the loan to Fron LP.  In the commitment letter signed by

Robert G. Welch, it was clearly stated that the guarantors were to guarantee "50% of the loan." It is inconceivable that INB would condition its performance of the contract on a guaranty securing anything less than one-half of the loan. Therefore, we reject the guarantors' argument that they only guaranteed payment of insurance premiums and transfer taxes.

**Conclusion**

There is no genuine dispute as to the validity of the Note and the amount due has been established by the Maryland judgment. Nor is there any dispute as to the extent of the defendants' obligations under the guaranty. Therefore, the plaintiff is entitled to judgment as a matter of law as to liability.